# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 26-1047C
(Filed: November 9, 2026)

| | |
|---|---|
| **TIMAEUS C. WEFLEN,** | ) |
| *Plaintiff,* | ) |
| v. | ) |
| **UNITED STATES,** | ) |
| *Defendant.* | ) |

*Sarah Gebrengus,* DLA Piper LLP, Washington, DC, for plaintiff. With her on the brief were *Leonard Yoo*, DLA Piper LLP, Washington, DC; and *Rochelle Bobroff* and *Amy Fulmer*, National Veterans Legal Services Program, Arlington, VA.

*Nereida G. Lopez Favela*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the brief were *Brett A. Shumate*, Assistant Attorney General; and *Patricia M. McCarthy*, Director, and *Steven M. Mager*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. *Major Adam D. Kostik*, Litigation Attorney, U.S. Army Litigation Division, U.S. Army Office of the General Counsel, Fort Belvoir, VA, Of Counsel.

## OPINION AND ORDER

***BONILLA, Judge*.**

Through this action, Staff Sergeant (SSG/E-6) Timaeus C. Weflen (USA-Ret.), medically retired from the Regular Army after sustaining combat-related injuries, challenges the decisions of the United States Army Human Resources Command (HRC) denying in part his requests for combat-related special compensation (CRSC) under 10 U.S.C. § 1413a. Pending before the Court are plaintiff's motion for judgment on the administrative record and the government's unopposed motion for a voluntary remand. For the following reasons, the government's motion is granted, rendering plaintiff's motion moot.

## BACKGROUND

SSG Weflen enlisted in the United States Army on October 14, 2010, entered on active duty on April 4, 2011, and served as a Tactical Power Generation Specialist until his disability retirement on May 10, 2022.[1] During his nearly twelve-year military career, SSG Weflen twice deployed to Afghanistan: from February to July 2012, in support of Operation Enduring Freedom, and then from October 2017 to June 2018, in support of Operation Freedom's Sentinel. In the interim, from June to December 2014, he deployed to Jordan as part of Operation Inherent Resolve. In recognition of his engagement in active ground combat with the enemy during his first deployment to Afghanistan, SSG Weflen was awarded the Combat Action Badge in June 2012.[2] SSG Weflen was placed on the disability retirement list on April 11, 2022, and his DD Form 214 (Certificate of Release or Discharge from Active Duty) confirms a combat-related disability retirement. SSG Weflen separated from the Army with an honorable characterization of service.

While deployed to Afghanistan in 2012, SSG Weflen reportedly "endured repeated concussive blast exposures from improvised explosive devices (IEDs), rocket-propelled grenades (RPGs), mortar fire, and high-caliber weaponry, frequently requiring him to take immediate cover and dive to the ground under hazardous circumstances." ECF 1 at 5 (quotation marks omitted). Critical here, on May 2, 2012, while stationed at a remote patrol base in Chak Valley (located in the Chak District of Maidan Wardak Province, southwest of Kabul, Afghanistan), SSG Weflen suffered a head and neck injury while "unloading a pair of water blivits into a water buffalo

---

[1] A Tactical Power Generation Specialist (Military Occupational Specialty 91D), also known as a Power Generation Equipment Repairer, "suppl[ies] the power needed to run virtually every aspect of Army activity; power that must be available whenever and wherever the Army needs it." U.S. Army, *Mechanics & Engineering: Tactical Power Generation Specialist 91D*, *available at* https://perma.cc/M2MJ-985T. Service members in this role "supervise and perform maintenance and repairs on power-generation equipment, internal combustion engines, and associated equipment in mobile and stationary power plants." *Id.* They also "train to use high-tech test and diagnostic equipment, read complex wiring schematics and diagrams, and repair electrical components." *Id.*

[2] While serving on active duty, SSG Weflen also earned the following medals, decorations, and ribbons: Joint Service Commendation Medal, Army Achievement Medal (6th award), Army Commendation Medal (5th award), Campaign Medal with Two Campaign Stars, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Army Good Conduct Medal (3rd award), Army Service Ribbon, Overseas Service Ribbon (2nd award), NATO Medal (2nd award), and Sharpshooter Marksmanship Badge with Carbine Bar.

using a wrecker hook to elevate the pair of blivits."[3] AR 475.[4] As recorded by a treating physician immediately after the incident, SSG Weflen reported:

> The blivits were connected by a chain on a wrecker hook when the empty blivit shifted up causing the full blivit to fall approximately 3 feet onto [SSG Weflen's] head. [SSG Weflen] was knocked back onto the water buffalo where he hit the back of his head and then fell to the ground where he attempted to get up and was stunned slightly.

*Id.* The Army doctor, who examined SSG Weflen "within 1 minute of the incident," recorded his vitals as including a Mini-Addenbrooke's Cognitive Examination (MACE) score of 25, suggesting possible traumatic brain injury (TBI). *Id.* He further documented midline tenderness at the base of SSG Weflen's neck (C7-T1).[5] The doctor noted no additional symptoms or abnormalities but referred SSG Weflen "to the next level of care to facilitate imaging of spine and ensure no fracture present." AR 475. He then opined: "Highly doubt fracture, however[,] cannot clear with [National Emergency X-Radiography Utilization Study (NEXUS)] criteria[;[6]] patient placed in C-Collar." *Id.* Releasing SSG Weflen "without limitations," the doctor remarked that the injuries were "Work Related; . . . Not Battle Related; . . . Non-Battle Injury." *Id.* SSG Weflen was immediately taken to the trauma bay of an Army theater clinic, where the treating physician characterized his condition as "[n]eck trauma w/ midline cervical spine ten[d]erness." AR 484.

During an August 29, 2012 follow-up examination, another physician opined that SSG Weflen's recurring "[h]eadaches are directly connected to neck pain." AR 480. The physician reported that SSG Weflen's headaches were improving through neck exercises, providing the following assessment: history of a concussion with a brief loss of consciousness, which occurred once, and has since resolved; Post-Traumatic Headache (PTHA) accompanied by cervicalgia (i.e., neck pain).

---

[3] In general, "blivet" means "something useless, unnecessary, annoying." *Blivet, Oxford English Dictionary*, *available at* https://perma.cc/HJ8T-GLT9. In this context, a "blivet" (sometimes spelled "blivit") is a collapsible fabric bladder tank capable of storing and transporting hundreds or thousands of gallons of water by light vehicle or helicopter. *See* AR 410 ("A blivet is a unique military device that allows water or fuel to be transported to remote outposts . . . by helicopter."); AR 472–73 (photographs of blivets). A "water buffalo" is a 400-gallon water trailer used to deliver water. *See* Jason Spencer, *Attack of the Water Buffaloes*, *U.S. Army* (May 30, 2017), *available at* https://perma.cc/68KH-LL7L.

[4] "AR __" is a citation to the administrative record.

[5] "C7 is the term used for the 7th vertebra in the Cervical Spine (neck). Directly below it sits the T1 vertebra, the top level of the thoracic spine." Andrew Cole, *All About the C7-T1 Spinal Segment (Cervicothoracic Junction)*, *SPINE-health* (Mar. 9, 2026), *available at* https://perma.cc/NM3A-98N9.

[6] "NEXUS . . . is a set of validated criteria used to decide which trauma patients do not require cervical spine imaging. Trauma patients who do not require cervical spine imaging require all the following findings: alert and stable; no focal neurologic deficit; no altered level of consciousness; not intoxicated; no midline spinal tenderness; and no distracting injury." Matt A. Morgan, *NEXUS criteria*, *Radiopaedia* (Mar. 4, 2026), *available at* https://perma.cc/24GJ-9EBP.

SSG Weflen's primary diagnosis was recorded as cervicalgia. He was prescribed over-the-counter pain medication for his cervicalgia-triggered headaches. SSG Weflen reportedly continued to suffer from neck pain and recurring headaches through the remainder of his military service.

Following his disability retirement, the Department of Veterans Affairs (VA) issued a rating decision on June 27, 2022, granting in part SSG Weflen's claim for service-connected disability as follows:

| Condition | Percentage |
|---|---|
| Obstructive Sleep Apnea | 50% |
| Traumatic Brain Injury (TBI) and Post-Traumatic Stress Disorder (PTSD) | 40% |
| Cervical Spine Strain / Disc Bulge at C5–C6 (lower neck) | 30% |
| Migraine (including variants) | 30% |
| Temporomandibular Joint (TMJ) | 30% |
| Lumbosacral Spine Strain / Degenerative Disc Disease | 20% |
| Right Lower Extremity Radiculopathy | 20% |
| Right Knee Strain | 10% |
| Left Knee Strain | 10% |
| Right Ankle Strain | 10% |
| Left Ankle Strain | 10% |
| Bilateral Flat Foot (Pes Planus) | 10% |
| Tinnitus | 10% |
| Erectile Dysfunction | 0% |
| Bilateral Diplopia and Bilateral Dry Eye Syndrome | 0% |

AR 37–38.[7] The effective date for each service-connected condition—combined to merit a 100% disability rating—was May 11, 2022 (i.e., the day after his disability retirement).

Nearly two years later, SSG Weflen (through counsel) submitted a claim for CRSC (DD Form 2860). In support, SSG Weflen cited five medical conditions credited by the VA: TBI/PTSD, TMJ, lower neck strain, migraine, and tinnitus. He attributed the TBI/PTSD, TMJ, and tinnitus to his engagement in direct combat while deployed to Afghanistan. As for the lower neck strain and migraines, SSG Weflen cited the accident involving the water blivet—which he repeatedly describes as "an instrumentality of war"—also occurring during his Afghanistan deployment.[8] AR 414–15. In his 200-page application for CRSC, SSG Weflen included his medical records dating back to the May 2, 2012 incident.

On August 9, 2024, the HRC approved SSG Weflen's claim for CRSC insofar as it related to TBI/PTSD (40%) and tinnitus (10%), awarding him 50% total combat-

[7] The VA also granted SSG Weflen's claim for special monthly compensation based on loss of use of a creative organ.

[8] For completeness, SSG Weflen suggested that his TBI/PTSD and TMJ worsened because of the water blivet accident.

related disability retroactive to June 1, 2022.[9] The cited justification was SSG Weflen's Combat Action Badge. Relevant here, the HRC denied SSG Weflen's claim with respect to lower neck strain (30%), migraines (30%), and TMJ (30%), explaining as to each: "The provided documentation does not show an accident or incident to connect disability to a combat-related event." AR 379. Although not claimed by SSG Weflen, the HRC reviewed the erectile dysfunction condition (0%) "due to association with Special Monthly Compensation (SMC)," similarly noting the inability to "verify [it] as a combat-related disability."[10] *Compare* AR 390–395, 408, 411–15, *with* AR 379 (alteration to capitalization; emphasis omitted). The HRC analysis further noted:

> Your request form requires that you prove your eligibility [for CRSC] by providing medical records or notes that verify how the injury/disability occurred. There were no supporting documents in your claim that confirm your conditions were directly caused by a specific combat-related event. To award conditions as combat-related, you must provide this office with official medical documentation that shows how each condition is combat-related as defined by CRSC program guidance. **Medical documentation must be from the time the injury occurred.**

AR 379.

SSG Weflen submitted a detailed request for reconsideration on March 27, 2025, attaching an array of supporting documentation. Challenging the HRC's initial denial of combat-related disability as to his lower neck strain, migraines, and TMJ, SSG Weflen amplified his claimed qualifications under the "instrumentality of war" prong of the CRSC statute, 10 U.S.C. § 1413a(e)(2)(D). AR 21–28. On the CRSC Reconsideration Request Form (CRSC Form 12e), SSG Weflen also noted Veterans Affairs Schedule for Rating Disabilities (VASRD) code "7522" denoting erectile dysfunction, *compare* AR 18, *with* AR 379, but did not substantively address the issue in his accompanying memorandum. *See generally* AR 19–28. The HRC denied SSG Weflen's request for reconsideration on August 8, 2025, explaining (for each of the four conditions): "SECOND DISAPPROVAL; no new medical evidence provided

[9] By regulation, CRSC "[p]ayments are made on the first day of the first month following the month in which the compensation accrued, provided the member is receiving VA disability compensation for a disability that has been determined to be combat-related by the Military Department." U.S. Dep't of Def., 7000.14–R, DOD Financial Management Regulation vol. 7B, ch. 63, para. 1.1.1 (May 2022) [hereinafter DOD FMR].

[10] "VA [SMC] is a higher rate of compensation [paid] to Veterans as well as their spouses, surviving spouses, and parents with certain needs or disabilities." *Current special monthly compensation rates*, *U.S. Dep't of Veterans Aff.* (Dec. 3, 2025), *available at* https://perma.cc/MLD2-YHD4. Level K covers loss of creative or reproductive organs, including erectile dysfunction. *Id.*

to show combat-related event caused conditions." AR 2. As before, the HRC analysis further noted:

> The evidence within the new documentation that you submitted still does not establish a link between requested/previously denied conditions and a combat-related event. To award a condition as combat-related you must provide this office with official medical documentation, **from the time the injury occurred**, that shows how each condition is combat-related as defined by CRSC program guidance.
>
> The fact that VA established your diagnoses as service connected means they were incurred during your military career; not that they are combat-related. VA is not chartered nor authorized to make combat-related determinations. Your application package does not establish that specific combat-related events caused your diagnosis/diagnoses.

*Id.* SSG Weflen filed this action on July 22, 2026.

## ANALYSIS

"CRSC provides special compensation to members of the Uniformed Services who have retired pay reduced because of receiving [VA] disability compensation where a portion of such []VA disability compensation is the result of disabilities that are combat-related as determined by the Military Department." DOD FMR, vol. 7B, ch. 63, para. 1.1. Title 10 of the United States Code, Section 1413a, mandates the payment of CRSC to eligible military retirees. The former service member must be entitled to qualifying retired pay[11] and have a combat-related disability. 10 U.S.C. § 1413a(c). "The statute defines a qualifying 'combat-related disability' as one that is either 'attributable to an injury for which the member was awarded the Purple Heart,' or that the claimant incurred in armed conflict, during hazardous service or conditions simulating war, or through an instrumentality of war." *Soto v. United States*, 605 U.S. 360, 364–65 (2025) (cleaned up) (quoting 10 U.S.C. § 1413a(e)).

Consistent with § 1413a(e), DOD FMR provides:

> A combat-related disability is a disability with an assigned medical diagnosis code from the VASRD and which a Military Department has determined is combat-related based on the following criteria:

[11] Inapplicable here, the statute specifically exempts retired pay authorized under 10 U.S.C. § 12731b, applicable to reservists who have completed between 15 and 20 years of military service and separated due to a physical disability not incurred in the line of duty.

> 5.2.1. The disability was incurred as a direct result of armed conflict,
>
> 5.2.2. The disability was incurred while engaged in hazardous service,
>
> 5.2.3. The disability was incurred in the performance of duty under conditions simulating war, or
>
> 5.2.4. The disability was incurred through an instrumentality of war.

DOD FMR, vol. 7B, ch. 63, para. 5.2. The regulation states that non-combat-related injuries "will not be considered in determining eligibility for CRSC or the amount of CRSC payable," further noting that "[a]n uncorroborated statement in a record that a disability is combat-related will not, by itself, be considered determinative for purposes of meeting the combat-related standards for CRSC prescribed herein." *Id.* (note to para. 5.2).

Addressing disabilities incurred through an instrumentality of war, the regulation provides:

> 6.4.1. There must be a direct causal relationship between the instrumentality of war and the disability. It is not required that a member's disability be incurred during an actual period of war. The disability must be incurred incident to a hazard or risk of the service.
>
> 6.4.2. An instrumentality of war is a vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence or injury. It may also include such instrumentality not designed primarily for Military Service if use of or occurrence involving such instrumentality subjects the individual to a hazard peculiar to Military Service. Such use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits.
>
> 6.4.3. A determination that a disability is the result of an instrumentality of war may be made if the disability was incurred in any period of service as a result of such diverse causes as wounds caused by a military weapon, accidents involving a military combat vehicle, injury or sickness caused by fumes, gases, or explosion of military ordnance, vehicles, or materiel.
>
> 6.4.4. For example, if a member is engaging in a sporting activity while on a field exercise and falls and strikes an armored vehicle, the injury would not be considered the result of an instrumentality of war (armored vehicle) because it was the sporting activity that was the cause

> of the injury, not the vehicle. On the other hand, if the individual was engaged in the same sporting activity and the armored vehicle struck the member, then the injury would be considered the result of an instrumentality of war.

*Id.*, para. 6.4. In evaluating such claims, the regulations instruct:

> Determinations of whether a disability is combat-related will be based on the preponderance of available documentary information where quality of information is more important than quantity. All relevant documentary information is to be weighed in relation to known facts and circumstances, and determinations will be made on the basis of credible, objective documentary information in the records as distinguished from personal opinion, speculation, or conjecture.

*Id.*, para. 10.1.1. CRSC applicants bear the ultimate burden of demonstrating that a particular disability is combat-related. *Id.*, para. 10.1.2.

SSG Weflen charges that the HRC's initial and reconsideration decisions denying CRSC for his lower neck strain, migraines, and TMJ were arbitrary, capricious, unsupported by substantial evidence, and otherwise contrary to law. In support, SSG Weflen cites the HRC's failure to address his "instrumentality of war" argument and the contemporaneous medical evidence supplied in support of his initial application and request for reconsideration. The Court agrees.

In determining that SSG Weflen's TBI/PTSD and tinnitus diagnoses qualified as combat-related disabilities, the HRC cited his Combat Action Badge—consistent with the definition included in § 1413a(e)(2)(A). *Compare* AR 378 ("This condition is granted due to your combat award."), *with* 10 U.S.C. § 1413a(e)(2)(A) (providing that a disability incurred "as a direct result of armed conflict" qualifies as a combat-related disability). Notwithstanding SSG Weflen's invocation of the instrumentality of war provision, § 1413a(e)(2)(D), in claiming CRSC for his diagnosed disabilities related to the water blivet/water buffalo accident (i.e., lower neck strain, migraines, and TMJ), the HRC simply repeated the refrain: "The provided documentation does not show an accident or incident to connect disability to a combat-related event." AR 379. There is no explanation, for example, why the HRC does not consider water blivets to be military service vessels or devices and/or the water buffalo to be a military service vehicle under DOD FMR, vol. 7B, ch. 63, para. 6.4.2. And, if the blivets and/or water buffalo do qualify as instrumentalities of war, why did the HRC not consider his injuries combat-related, particularly since the accident occurred in the theater of war (i.e., a remote patrol base in Afghanistan during Operation Enduring Freedom), *see id.*, para. 6.4.3 (noting that a "determination that a disability is the result of an instrumentality of war may be made if the disability was incurred in any period of service as a result of such diverse causes as . . . accidents involving a military combat vehicle"), and the injuries occurred during the use of the blivet and water buffalo for

their intended military purposes, *cf. id.*, para. 6.4.4 (noting that, "[f]or example, if a member is engaging in a sporting activity while on a field exercise and falls and strikes an armored vehicle, the injury would not be considered the result of an instrumentality of war (armored vehicle) because it was the sporting activity that was the cause of the injury, not the vehicle").

The HRC similarly failed to address the contemporaneous medical records SSG Weflen supplied in support of his denied disability claims. Indeed, as noted *supra*, the medical records included the notes of examination from an Army doctor who examined SSG Weflen "within 1 minute of the [blivets and water buffalo] incident," AR 475; the same-day medical treatment administered at an Army theater clinic, AR 484; and a follow-up medical examination less than four months later, AR 480. The HRC did not mention any of these medical records. Yet, in denying SSG Weflen's CRSC claim—initially and on reconsideration—the HRC suggested that he failed to submit any contemporaneous medical records. AR 379 ("**Medical documentation must be from the time the injury occurred**."); AR 2 ("To award a condition as combat-related you must provide this office with official medical documentation, **from the time the injury occurred**, that shows how each condition is combat-related as defined by CRSC program guidance.").

To be clear, the HRC "is not required to detail its assessment of every piece of evidence in the record . . . ." *Osburn v. United States*, 171 Fed. Cl. 38, 45 (2024) (first citing *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995); and then citing *Sokol v. United States*, 120 Fed. Cl. 144, 151 (2015)), *aff'd*, No. 24-2025, 2025 WL 3719434 (Fed. Cir. Dec. 23, 2025). But where, as here, the decision maker "entirely fail[s] to consider an important aspect of the problem" (i.e., whether blivets and the water buffalo qualify as instrumentalities of war under § 1413a(e)(2)(D)), and "offer[s] an explanation for its decision that runs counter to the evidence before the agency" (i.e., suggesting no contemporaneous medical records were submitted), the decision is arbitrary, capricious, and unsupported by substantial evidence. *Kelly v. United States*, 69 F.4th 887, 894 (Fed. Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *accord Cumbie v. Meink*, No. 24-2505, 2025 WL 2772004, at *15 (D. Md. Sept. 26, 2025) (magistrate judge report and recommendation) (finding that a military correction board decision violated the Administrative Procedure Act because it failed to analyze retired service member's instrumentality of war argument, instead providing a boilerplate recitation of the standard in denying the CRSC claim); *Jeanpierre v. United States*, 176 Fed. Cl. 11, 33 (2025) ("The [military correction b]oard does not address the fact that in several instances the advisory opinions conflict with the contemporaneous medical treatment notes in the record." (citation omitted)).

At bottom, as recognized by the government in seeking a voluntary remand, judicial deference to the military's judgment cannot exist in an informational vacuum. Accordingly, this matter must return to the Army to consider in the first

instance, consistent with this opinion, both SSG Weflen's instrumentality of war argument and the contemporaneous medical records he supplied.

## CONCLUSION

For the foregoing reasons:

(1) Plaintiff's motion for judgment on the administrative record (ECF 11) is **DENIED** as moot.

(2) Defendant's unopposed motion for voluntary remand (ECF 12) is **GRANTED**.

(3) The Clerk of Court is directed to **VACATE** the remaining deadlines included in the scheduling order filed on August 18, 2026 (ECF 8).

(4) Pursuant to Rule 52.2(a) of the Rules of the United States Court of Federal Claims (RCFC), this case is **REMANDED** to the United States Army for further proceedings consistent with this opinion.

(5) Pursuant to RCFC 52.2(b)(1)(A), the HRC must reconsider SSG Weflen's CRSC claim. Specifically, the HRC must:

   a. Determine whether the blivets and water buffalo are instrumentalities of war as that term is defined in 10 U.S.C. § 1413a(e) and DOD FMR, vol. 7B, ch. 63, para. 6.4;

   b. Consider the contemporaneous medical records SSG Weflen submitted in support of his CRSC claim, including CRSC Claim # 20877 and CRSC Claim # 29399, and their enclosures; and

   c. Consider further any additional medical or documentary evidence, or arguments, that SSG Weflen submits within 30 days of this order.

(6) If the Army denies SSG Weflen's CRSC claim in whole or in part, the HRC must document the bases for the decision.

(7) Pursuant to RCFC 52.2(b)(1)(B), the HRC shall complete its remand review within **90 days**. This deadline is subject to good faith extension under RCFC 52.2(c)(1).

(8) During the remand:

   a. Pursuant to RCFC 52.2(b)(1)(C), the Clerk of Court is directed to **STAY** all proceedings in this matter until further order of the Court. The Court will retain jurisdiction over this case during the remand period.

b. Pursuant to RCFC 52.2(b)(1)(D), defendant shall **FILE** a status report on or before **December 9, 2026**, and **every 30 days** thereafter, during the remand period.

c. Pursuant to RCFC 52.2(d), within **10 days** of the conclusion of the remand proceedings before the HRC, the HRC shall **SERVE** plaintiff and defendant's counsel of record with a copy of the HRC's final decision and send the Court a copy of that decision.

d. Pursuant to RCFC 52.2(e)(1), within **14 days** of the filing of the HRC's final decision on remand, the parties shall **FILE** a joint status report with the Court setting forth the parties' position(s) regarding whether further litigation of this matter is necessary. If further proceedings are warranted, the parties shall include a proposed schedule to govern this case going forward.

(9) The Clerk of Court shall **SERVE** a copy of this opinion and order on the U.S. Army Human Resources Command:

Brigadier General R. J. Garcia
Commanding General, U.S. Army Human Resources Command
Combat Related Special Compensation
ATTN: AHRC-PDP-C (CRSC) – Dept 480
1600 Spearhead Division Avenue
Fort Knox, Kentucky 40122-5408

It is so **ORDERED**.

s/ Armando O. Bonilla
Armando O. Bonilla
Judge